******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

GREGORY DEMOND, COADMINISTRATOR
(ESTATE OF BENJAMIN DEMOND),
ET AL. *v.* PROJECT
SERVICE, LLC,
ET AL.
(SC 20025)
(SC 20026)
(SC 20027)
(SC 20028)

Palmer, McDonald, Robinson, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

Pursuant to the Restatement (Second) of Torts (§ 324A), "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking . . . ."

The plaintiffs sought to recover damages from the defendants, the operators of an interstate highway service plaza owned by the state, for, inter alia, the wrongful death of the named plaintiff's decedent, D, in an automobile accident caused by a drunken driver, G, a temporarily homeless man who for the week preceding the accident had been living out of his vehicle at the service plaza. On the date of the accident, G consumed a large amount of alcohol while parked at the plaza and then proceeded to depart the plaza and drive on the adjacent highway where he caused a multivehicle accident, killing D and injuring D's two children and another motorist who was driving on the highway at the time. The defendant P Co. previously had entered into a concession agreement with the state to operate and maintain the service plaza. P Co. subcontracted the day-to-day operation of the service plaza to the defendant A Co., and A Co. in turn subcontracted the operation of certain portions of the service plaza to the defendant F Co. Pursuant to the agreement, the defendants agreed not to permit the consumption of alcohol or loitering on the premises of the service plaza, to notify the police of any consumption of alcohol or loitering, and to train all subcontractors and their employees to comply with those contractual obligations. The plaintiffs alleged, inter alia, that the defendants breached a duty, arising under § 324A of the Restatement (Second) of Torts, to protect the plaintiffs from the increased risk of harm created by the defendants' failure to perform their contractual obligations and that the accident was caused by the defendants' negligence. The plaintiffs also alleged that the defendants created a public nuisance by permitting G to loiter and consume alcohol at the plaza. The defendants filed motions for summary judgment, contending, inter alia, that, under the circumstances, they did not owe a duty of care to the plaintiffs. The trial court granted the defendants' motions for summary judgment as to the public nuisance claims but denied them as to the negligence claims. Thereafter, a jury trial was held on the negligence claims. The trial court instructed the jury that the defendants owed a duty of care to the plaintiffs as a matter of law for the purpose of determining liability under § 324A, and the jury returned a verdict in favor of the plaintiffs, finding that the defendants were negligent, that their negligence increased the risk of harm to the plaintiffs beyond that which existed without the defendants' contractual undertaking, and that the plaintiffs or others had relied on the defendants to exercise reasonable care. Subsequently, the court denied the defendants' motions to set aside the verdict and to direct judgment in their favor as a matter of law, concluding that the defendants owed a duty to the plaintiffs, which was created by the concession agreement and willingly assumed by the defendants. The court further concluded that the jury reasonably could have found that the defendants had agreed that the provisions in the agreement prohibiting the consumption of

alcohol and loitering at the service plaza were intended to protect motorists on the adjacent highway. The trial court rendered judgment for the plaintiffs on their negligence claims and for the defendants on the public nuisance claims, and the plaintiffs and the defendants filed separate appeals. *Held*:

1. The trial court incorrectly determined that the defendants, by undertaking a contractual obligation to prevent the consumption of alcohol and loitering at the service plaza, owed a duty of care to the plaintiffs under § 324A and, therefore, improperly denied the defendants' motions to set aside the verdict and to direct judgment in their favor on the negligence claims: a landowner or possessor of property has no common-law duty to prevent the risk of harm to third persons off the property that is caused by a person's consumption of alcohol on the property, and, to impose such a duty under § 324A of the Restatement (Second) of Torts, there must be an express contractual undertaking or evidence of an unambiguous intention on the part of the contracting parties to protect third persons from foreseeable, physical harm within the scope of the services to be performed under the contract; in the present case, the evidence was insufficient as a matter of law to support a finding that the parties to the concession agreement, the state and P Co., had a specific intent to protect motorists on the highway adjacent to the service plaza from the risk of harm created by the consumption of alcohol at the service plaza, as the agreement itself did not mention an actual intention to provide such protection and there was no extrinsic evidence that demonstrated any such contractual intent; moreover, evidence that harm to passing motorists is a foreseeable result of the negligent failure to prevent alcohol consumption at the service plaza was not sufficient to establish that the no alcohol and no loitering provisions in the concession agreement were included with the intention of protecting highway travelers.

2. This court concluded that it was unnecessary, in light of its determination that the defendants owed no duty of care to the plaintiffs, to address the defendants' claims, raised as alternative grounds for reversing the judgment of the trial court, that, even if they owed a duty of care to the plaintiffs, they were not liable for negligence under either § 324A (a), because they did not increase the risk of harm to the plaintiffs by negligently performing their contractual undertaking, or under § 324A (c), because neither the state nor a third person relied on the defendants to protect highway motorists; nonetheless, this court observed that there was no evidence that the defendants' acts or omissions served to increase the risk of harm to the plaintiffs, and the evidence was insufficient to establish that either highway motorists or the state had relied on the defendants to protect motorists on the highway adjacent to the service plaza.

3. The plaintiffs could not prevail on their claim that the trial court improperly granted the defendants' motions for summary judgment with respect to their claim that the defendants created a public nuisance by allowing G to loiter and consume alcohol at the service plaza for one week; even if the defendants' conduct in allowing G to loiter and consume alcohol at the plaza contributed to such a dangerous condition, the sole proximate cause of the automobile accident was G's immoderate consumption of alcohol and G's act of driving his vehicle while intoxicated rather than the defendants' conduct in allowing G to loiter and consume alcohol at the plaza.

Argued April 30 and May 1, 2018—officially released June 11, 2019

*Procedural History*

Action to recover damages for, inter alia, the wrongful death of the named plaintiff's decedent, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the case was transferred to the Complex Litigation Docket; thereafter, the trial court, *Zemetis, J.*, granted in part the motions for summary judgment filed by the named defendant et al.; subsequently, the action was withdrawn as to O, R & L Facility Services, LLC; thereafter, the case was tried to the jury before *Zemetis, J.*; verdict for the plaintiffs;

subsequently, the trial court, *Zemetis, J.*, granted the plaintiffs' motion for additur and rendered judgment for the plaintiffs, from which the plaintiffs and the named defendant et al. filed separate appeals. *Reversed in part*; *judgment directed.*

*Daniel J. Krisch*, with whom were *Rachel J. Fain* and, on the brief, *Michelle I. Schaffer, James M. Campbell*, pro hac vice, and *Jacob J. Lantry*, for the appellant in Docket No. SC 20025 and the appellee in Docket No. SC 20028 (defendant Alliance Energy, LLC).

*Randy Faust*, pro hac vice, with whom were *Stephen G. Murphy, Jr.*, and, on the brief, *Christopher F. Wanat*, for the appellant in Docket No. SC 20026 and the appellee in Docket No. SC 20028 (named defendant).

*A. Jeffrey Somers*, for the appellant in Docket No. SC 20027 and the appellee in Docket No. SC 20028 (defendant 4MM, LLC).

*Karen L. Dowd* and *Brendon P. Levesque*, with whom, on the brief, was *Wesley W. Horton*, for the appellants in Docket No. SC 20028 and the appellees in Docket Nos. SC 20025, SC 20026 and SC 20027 (plaintiffs).

*Opinion*

ECKER, J. Section 324A of the Restatement (Second) of Torts imposes negligence liability, when certain conditions are met, on a party whose negligent performance of a contractual undertaking causes foreseeable physical harm to a nonparty to the contract. The present appeals require us to determine the scope of this duty under unusual circumstances. For approximately one week preceding March 9, 2012, a temporarily homeless man named Willis Goodale lived out of his Jeep at the Montville Service Plaza (service plaza) located on Interstate 395 (I-395) in Montville. On the evening of March 9, after consuming a large amount of alcohol while parked at the service plaza, Goodale drove his Jeep onto I-395, where he caused a multivehicle crash. Benjamin Demond was killed. Demond's young sons, Alexander Demond (Alexander) and Nicholas Demond (Nicholas), were severely injured, as was Andrew Crouch, the driver of another vehicle on the roadway at the time. The present lawsuit was brought on behalf of these victims against the parties responsible for operating and maintaining the service plaza. The theory of negligence underlying the plaintiffs' lawsuit derives from a contract (concession agreement) between the named defendant, Project Service, LLC (Project Service), and the Connecticut Department of Transportation (DOT), which owned the service plaza. The concession agreement imposed the responsibility on Project Service to operate and maintain the service plaza in all respects. Project Service subcontracted the day-to-day operation of the service plaza, or certain portions of it, to the defendant Alliance Energy, LLC (Alliance), which, in turn, subcontracted the operation of the convenience mart, parking area and plaza to the defendant 4MM, LLC (4MM), while retaining control over the fuel service area. As part of the concession agreement, Project Service and its subcontractors agreed not to allow the consumption of alcohol or loitering at the service plaza.

The plaintiffs alleged that the defendants created a public nuisance by permitting Goodale to loiter and to consume alcohol on the service plaza premises, and also breached a duty owed to passing motorists, arising under § 324A of the Restatement (Second), to protect them from the increased risk of harm created by the defendants' failure to perform their contractual obligations.[1] The trial court rendered summary judgment on the plaintiffs' public nuisance claims but submitted their negligence claims to the jury. The jury returned a verdict in the plaintiffs' favor based on its express findings that the defendants were liable in negligence under the principles set forth in § 324A. The trial court rendered judgment against the defendants in the amount of $5,347,000.[2]

On appeal,[3] the defendants contend that their con-

tractual undertaking to prohibit loitering and alcohol consumption at the service plaza did not create a duty to third-party motorists injured off the service plaza premises by a drunk driver who became intoxicated at the service plaza; the plaintiffs, in their cross appeal, contend that the trial court improperly rendered summary judgment on their public nuisance claims. We conclude that the defendants' contractual undertaking did not create a duty to the plaintiffs, and the plaintiffs' public nuisance claims fail as a matter of law. We therefore reverse in part the judgment of the trial court.

I

The jury reasonably could have found the following facts. For approximately one week leading up to March 9, 2012, Goodale, who was temporarily homeless, lived in his Jeep in the parking lot of the service plaza on I-395. The service plaza was owned by the DOT. It was operated and maintained at all relevant times by Project Service pursuant to the concession agreement between Project Service and the DOT. Project Service subcontracted the day-to-day operation of the service plaza, or certain portions of it, to Alliance, which operated the fuel service area but subcontracted the operation of the convenience mart, parking area and plaza to 4MM. The concession agreement provided that Project Service and its subcontractors would not allow the consumption of alcohol or loitering at the service plaza (no alcohol/no loitering provisions).[4]

Goodale was an alcoholic. During the time he lived in his Jeep at the service plaza, he frequented the service plaza's convenience store to buy food and nonalcoholic beverages, to use the bathroom, and to charge his cell phone. During that time, Goodale told a store employee that he would be staying at the service plaza until he could be admitted to the Stonington Institute, a treatment facility for alcohol and substance abuse. Goodale drank one-half gallon of vodka every two days while living at the service plaza, and some of the employees working at the service plaza were aware of his consumption of alcohol.

On March 9, 2012, Goodale spent a portion of the day drinking vodka in his Jeep while parked at the service plaza. At some point during the evening, he drove the Jeep from the parking lot onto the on-ramp to I-395 southbound. Goodale felt dizzy and immediately pulled to the shoulder, where he slept for approximately one to one and one-half hours. Upon awakening, Goodale decided to return to the service plaza by driving south a short distance on I-395 to an emergency turnaround in the median of the highway, intending to use the turnaround to access the northbound lanes of I-395 and then drive to the next emergency turnaround to return to the service plaza. When Goodale attempted to cut across the southbound lanes of I-395 to the turnaround, he struck a Nissan sedan being driven by

Demond. Demond's sons, Alexander, aged six, and Nicholas, aged four, were in car seats in the backseat of the sedan. The collision caused Demond to lose control of the Nissan, and he veered through the turn-around into the oncoming northbound traffic. Demond's Nissan hit a Ford Explorer driven by Crouch head on, tumbled end over end, hit another vehicle and then came to rest. The results were catastrophic. Demond was killed in the crash, and Alexander, Nicholas and Crouch were severely injured. Testing of a blood sample taken from Goodale one hour after the crash showed that his blood alcohol level was .25 milligrams per deciliter, well over the legal limit.

The plaintiffs brought this action against Project Service, Alliance and 4MM, among others.[5] The second amended complaint alleged that the March 9, 2012 crash was the result of the defendants' negligent conduct, including, among other things, their failure to notify state or local police that Goodale was living at the service plaza and consuming alcohol there, or to take other steps to prevent him from engaging in those activities, as required by the no alcohol/no loitering provisions of the concession agreement and the various subcontracts. The plaintiffs also alleged that the defendants had maintained a public nuisance by allowing Goodale to live and to consume alcohol at the service plaza.

The defendants all filed motions for summary judgment. Those motions used variations on the same theme to attack the negligence claims, with the common point being that the defendants owed no duty to the plaintiffs under the circumstances. Project Service relied on a number of cases holding that a party in its position has a legal duty to take steps to prevent another person from harming a third party only if the third party is an "identifiable victim," and contended that motorists traveling on I-395 were not identifiable victims under the circumstances. Alliance, for its part, contended that it had no duty to the plaintiffs because it was responsible only for the fuel service area, and Goodale had not consumed alcohol or loitered in that location. Alliance also contended that a person in control of premises has no duty to protect motorists from persons who consume alcohol on the premises but cause harm off the premises. 4MM contended that it had no duty to the plaintiffs because Goodale's criminal conduct, driving under the influence of alcohol, was a superseding cause of the crash.

As to the public nuisance claims, Project Service contended that those claims failed because they were derivative of the negligence claims. Alliance contended that the claims failed because it had no duty to the plaintiffs and because its "use of the land did not have a natural tendency to create a danger from motor vehicle accidents on the interstate highway," and 4MM contended

that a garden variety premises liability claim did not give rise to a public nuisance claim.

The plaintiffs opposed summary judgment primarily on the ground that the no alcohol/no loitering provisions of the concession agreement were "intended to protect the public, not only at the plaza, but those passing motorists on the highway in proximity to the plaza." Their central argument was that the defendants were liable under § 324A of the Restatement (Second), because, among other reasons, the no alcohol/no loitering provisions gave rise to an "undertaking" by the defendants to use due care to prevent harm of this nature from befalling the plaintiffs and other travelers. With respect to the public nuisance claims, the plaintiffs contended that the defendants had interfered with the right of the public to travel on the highway by permitting Goodale to live and to consume alcohol at the service plaza.

At oral argument on the motions for summary judgment, the trial court expressed its views that the issues arising from the negligence claims were "novel," that none of the cases cited by the parties was directly on point, and that "we're stretching every aspect of tort liability to see whether there is responsibility here." The trial court's written memorandum of decision reflects the court's serious engagement with the legal issues presented, as well as the difficulty posed by some of those issues. The trial court initially set forth the general rule that "[w]hether a duty exists is a question of law for the court . . . ." (Internal quotation marks omitted.) To answer that question, the court discussed this court's only decision addressing the applicability of § 324A of the Restatement (Second) under Connecticut law, *Gazo* v. *Stamford*, 255 Conn. 245, 765 A.2d 505 (2001), which held that a contractor who undertakes the snow removal duties of a landowner is liable to a plaintiff who slips as a result of the contractor's negligent performance. Id., 253; see id. ("[u]nder § 324A [b] of the Restatement [Second] [the defendant contractor] is subject to liability to the plaintiff for his physical injuries if the plaintiff can show that [the contractor] failed to exercise reasonable care when performing the duty owed by [the landowner who hired the contractor] to the plaintiff"); see also id., 250 n.4 ("[i]t should be emphasized that [the contractor] may be held liable to the plaintiff [under § 324A (b)] only to the extent that [1] his contractual undertaking permits, and [2] his breach of duty to the plaintiff is part and parcel of [the landowner's] duty to the plaintiff").

Contrary to its initial inclination to decide the question of duty as a matter of law, the trial court ultimately concluded that "[t]he question of whether any or all of the defendants owe a legal duty of care to the plaintiffs is a question of fact for the trier of fact." The court did not directly address whether (or why) the no alcohol/

no loitering provisions created a duty *to motorists on I-395*, but it appears to have assumed that the duty would apply to passing motorists under § 324A of the Restatement (Second) if harm to those motorists was a foreseeable result of the defendants' alleged failure to exercise reasonable care in enforcing the no alcohol/ no loitering provisions. The court denied the defendants' motions for summary judgment as to the negligence claims on the ground that "[t]he finder of fact may conclude that [§ 324A] (a) and/or (b) [of the Restatement (Second)][6] impose a legal duty on any or all of the defendants for failure to adequately train, supervise, [and/or] implement the [relevant portions of the concession agreement] or otherwise comply with contractual obligations with respect to . . . Goodale's loitering and intoxication at the [s]ervice [p]laza." (Footnote added.) The trial court granted, however, the defendants' motions for summary judgment with respect to the public nuisance claims, on the ground that "there is no claim that *unreasonable or unlawful use of the defendant(s)' land* interfered with public rights." (Emphasis in original.)

The plaintiffs thereafter filed a third amended complaint, which is the operative pleading for purposes of these appeals, in which they reasserted the negligence claims against the defendants. At the conclusion of the plaintiffs' case-in-chief at trial, Alliance filed a motion for a directed verdict in which it renewed its claim that it had no duty to protect the plaintiffs from Goodale's tortious conduct because a person in control of premises has no duty to protect motorists from persons who consume alcohol on the premises and then drive off the premises. The trial court denied the motion.

Two particular circumstances regarding the submission of the case to the jury are relevant on appeal. First, although the trial court previously had determined, in its summary judgment ruling, that the existence of a duty owed by the defendants to the plaintiffs presented a factual issue for the jury, the court instructed the jury at trial that the defendants owed a duty of care to the plaintiffs for purposes of determining liability under § 324A of the Restatement (Second) *as a matter of law.*[7] Second, the core jury findings with respect to liability under § 324A were made in response to written interrogatories. These interrogatories required the jury to determine whether each of the defendants had negligently performed their contractual undertaking pursuant to the concession agreement and safety plan and the various subcontracts, and, if so, whether that defendant's negligence had increased the risk of harm to the plaintiffs beyond that which existed without the contractual undertaking (the determinative consideration under §324A [a]), or induced reliance by the DOT or the plaintiffs (the determinative consideration under § 324A [c]).[8]

The jury found that the defendants each were negligent, that their negligence increased the risk of harm to the plaintiffs, and that the plaintiffs or another had relied on each defendant to exercise reasonable care. Accordingly, the jury rendered a verdict in favor of the plaintiffs. The defendants filed timely motions to set aside the verdict and to direct judgment in their favor as a matter of law. In a supporting memorandum, adopted in full by Project Service, Alliance argued that it had no duty to the plaintiffs as a matter of law under § 324A (a) of the Restatement (Second) because the contractual undertaking to prevent the consumption of alcohol and loitering at the service area did not increase the risk of harm to motorists on I-395 beyond what the risk would have been if there had been no such contractual undertaking. Alliance further contended that it had no duty to the plaintiffs under § 324A (c) because "they were not within the scope of persons for whom Alliance had a contractual responsibility, i.e., 'patrons and [e]mployees of the [p]remises,'" and, therefore, the plaintiffs could not have relied on Alliance to protect them from harm. Finally, Alliance contended that no reasonable juror could have concluded that its negligence was a proximate cause of the plaintiffs' injuries.

The trial court denied the defendants' postverdict motions. With respect to the duty issue, the trial court stated that it had already found, in its ruling on the defendants' motions for summary judgment, that "a legal duty of care existed between the defendants and the plaintiffs as the context of their relationship created the duty. . . . The contracts created, and the defendants willingly assumed, the duty owed to [the] plaintiffs." The court also determined that the jury reasonably could have found that the defendants' representatives had agreed that the no alcohol/no loitering provisions were intended to protect motorists on the adjacent highway because "[e]ach [of the relevant witnesses] acknowledged that if people consumed alcohol while [at] highway service plazas, they would increase the risk of harm to passing motorists. Each acknowledged that motorists leaving the highway service plaza must travel on or along an interstate highway. Allowing intoxicated motorists to live [i]n highway service plazas, and operate motor vehicles from service plazas onto adjacent interstate highways, intensifies and concentrates the risk of collisions caused by drunk drivers in the area of service plazas."[9]

These appeals followed. The defendants contend in their appeals that the trial court improperly denied their motions to set aside the verdict and to direct judgment in their favor on the negligence claims because they owed no duty to the plaintiffs and have no liability to them under § 324A (a) or (c) of the Restatement (Second). The plaintiffs contend in their cross appeal

that the trial court improperly granted summary judgment in the defendants' favor on the public nuisance claims.[10] We agree with the defendants and disagree with the plaintiffs.

## II

We first address whether the defendants owed the plaintiffs a duty of care. The defendants argue that the trial court improperly denied their motions to set aside the verdict and to direct judgment in their favor on the negligence claims as a result of the court's improper determination that the defendants owed a duty of care to the plaintiffs under § 324A of the Restatement (Second). Their argument can be summarized succinctly: "Project Service [and the other defendants] did not contractually undertake a duty to prevent drunk driving on public highways."[11] In response, the plaintiffs renew their argument, which succeeded in the trial court, that Project Service "undert[ook] . . . for consideration, to render services to another which [it] should recognize as necessary for the protection of a third person or his things, when [it] contractually obligated [itself] to operate the . . . service plaza in a safe and secure manner for the benefit of its patrons and the traveling public." (Internal quotation marks omitted.) The plaintiffs further contend that the jury reasonably could have found that (1) liability attaches under § 324A (a) because Project Service's failure to exercise due care in the performance of its contractual duties increased the risk of harm to passing motorists, and/or (2) liability attaches under § 324A (c), because (i) the plaintiffs relied on Project Service to prevent people from drinking at the service plaza and then using I-395 and would have avoided the highway if they had known that Project Service was not exercising due care, and/or (ii) the DOT relied on Project Service to prevent people from drinking at the service plaza and then using I-395, and would have taken precautions itself if not for Project Service's promise.

Our standard of review is well settled. "Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to deny the defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . The foregoing standard of review also governs the trial court's denial of the defendant's motion for judgment notwithstanding the verdict because that motion is not a new motion, but [is] the renewal of [the previ-

ous] motion for a directed verdict." (Citation omitted; internal quotation marks omitted.) *Bagley* v. *Adel Wiggins Group*, 327 Conn. 89, 102, 171 A.3d 432 (2017).

Under Connecticut law, "[t]he existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 538–39, 51 A.3d 367 (2012). "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) *Munn* v. *Hotchkiss School*, 326 Conn. 540, 548, 165 A.3d 1167 (2017). Foreseeability is a critical factor in the analysis, because no duty exists unless "an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result . . . ." (Internal quotation marks omitted.) Id.; see also *Ruiz* v. *Victory Properties*, *LLC*, 315 Conn. 320, 328, 107 A.3d 381 (2015). Our law makes clear that foreseeability alone, however, does not automatically give rise to a duty of care: "[A] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) *Munn* v. *Hotchkiss School*, supra, 549–50; see also *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 650, 126 A.3d 569 (2015).

The duty analysis in the present case is complicated by the particular context in which the allegations of negligence arose against these defendants. The parties have framed the ultimate question as whether, under § 324A of the Restatement (Second), Project Service's contractual undertaking to operate the service plaza triggered a duty on its part to protect motorists on the highway from the risk of harm created by persons who consume alcohol on the premises of the service plaza.[12] In answering this question, we must keep in mind two established principles of Connecticut negligence law.

First, a person typically has no duty of care to protect third persons from harm caused by a primary tortfeasor, or to control the conduct of that tortfeasor, unless there is a special relationship between the defendant and either the third person or the tortfeasor, or other exceptional circumstances exist. See *Cannizzaro* v. *Marinyak*, 312 Conn. 361, 366–67, 93 A.3d 584 (2014) ("[T]here generally is no duty that obligates one party to aid or to protect another party. . . . One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another." [Citation omitted; internal quotation marks omitted.]); see also *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 323–25, 147 A.3d 104 (2016) (discussing affirmative duty of care to protect minor participants from sexual abuse by patrol leader); *Murdock* v. *Croughwell*, 268 Conn. 559, 566, 848 A.2d 363 (2004) (special relationship of custody or control may give rise to duty to protect third person from conduct of another); *Fraser* v. *United States*, 236 Conn. 625, 632, 674 A.2d 811 (1996) (same). Section 314 of the Restatement (Second) expresses the general rule in these terms: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." 2 Restatement (Second), Torts § 314, p. 116 (1965); see also 2 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 37, p. 2 (2012) (updated version of § 314 of Restatement [Second]). Due to the increasingly interdependent nature of our social lives today, in which many institutional and other caretaking or custodial roles exist as a matter of course, relationships giving rise to such a duty of care are not uncommon, but it still is important to keep in mind that a duty of care does not exist in the air, and caution must be exercised to ensure that a special relationship or other factors give rise to such a duty before negligence liability can be imposed for harm caused to a third person.[13]

Second, it is significant to our analysis that an owner or possessor of property in this state generally cannot be held liable in negligence for harms caused by adults who consume alcohol on that property but cause injury only after leaving to drive on the public roads.[14] This limitation holds true even when the owner or possessor plays an *active* role in creating the risk by actually serving the defendant the alcohol.[15] See *Bohan* v. *Last*, 236 Conn. 670, 676, 674 A.2d 839 (1996) ("[a]lthough we have never held that purveyors of alcohol have no [common-law] duty to exercise due care to protect the foreseeable victims of those who drink and drive, we have, nonetheless, declined to recognize a claim in negligence"); *Quinnett* v. *Newman*, 213 Conn. 343, 345, 568 A.2d 786 (1990) ("[a]t common law there is no cause of action based upon negligence in selling alcohol to

adults who are known to be intoxicated"), overruled on other grounds by *Craig* v. *Driscoll*, 262 Conn. 312, 813 A.2d 1003 (2003); *Nolan* v. *Morelli*, 154 Conn. 432, 443, 226 A.2d 383 (1967) ("the plaintiff has pointed to no common-law duty resting on these defendants, as sellers, proprietors or otherwise, to [prevent the tortfeasor, who had purchased and consumed alcohol on their property, from driving] or otherwise to guard against injuries sustained at unknown distances from the defendants' premises and at places and under circumstances wholly outside the defendants' knowledge or control").[16]

With these background principles in mind, it becomes apparent that Project Service had no common-law duty, arising from its status as possessor of the premises, to prevent the risk of harm to the plaintiffs; the alleged duty derives, if at all, from Project Service's contractual undertaking to prevent alcohol consumption and loitering at the service plaza. In other words, the question in this case is whether Project Service, by undertaking a contractual obligation to prevent alcohol consumption and loitering on the premises, assumed a duty of care to off premises highway travelers that the DOT did not have in the first instance. The plaintiffs contend that Project Service's contractual undertaking gave rise to a duty to protect passing motorists from the risk of harm caused by persons who consume alcohol at the service plaza because the no alcohol/no loitering provisions were "necessary for the protection of" passing motorists. 2 Restatement (Second), supra, § 324A, p. 142 ("[o]ne who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care"). They argue that regardless of any limitation on the usual common-law duties of a property owner, Project Service assumed a duty to protect passing motorists because it knew or should have known that its contractual undertaking to prevent alcohol consumption at the service plaza would function to protect such motorists from the foreseeable risk of harm created by persons who consumed alcohol at the plaza and then drove onto the highway.[17]

In support of this claim, the plaintiffs cite numerous cases involving a party's contractual undertaking to keep premises safe in which the courts held that the undertaking party had a duty to a third person injured as the result of the negligent performance of the undertaking. See, e.g., *Gazo* v. *Stamford*, supra, 255 Conn. 252 (when owner of property abutting public sidewalk had duty to clear sidewalk of ice and snow, and owner contracted with defendant to perform that duty, defendant had duty to plaintiff who slipped on icy sidewalk and was injured under § 324A of Restatement [Second]); *Clay Electric Cooperative, Inc.* v. *Johnson*, 873 So. 2d 1182, 1187 (Fla. 2003) (electric company that contracted to maintain street lights on public street had duty to

pedestrian who was killed as result of company's failure to maintain lights under § 324A);[18] *Ironwood Springs Christian Ranch, Inc.* v. *Walk to Emmaus*, 801 N.W.2d 193, 200 (Minn. App. 2011) (concluding that there was genuine issue of material fact as to whether entity that rented premises from owner had assumed duty to keep premises safe for benefit of invitee for purposes of § 324A); *Palka* v. *Servicemaster Management Services Corp.*, 83 N.Y.2d 579, 585–86, 634 N.E.2d 189, 611 N.Y.S.2d 817 (1994) (company that contracted with hospital to supervise preventative maintenance program was liable for injuries sustained by nurse when wall-mounted fan fell on her); *Tushaj* v. *Elm Management Associates, Inc.*, 293 App. Div. 2d 44, 48, 740 N.Y.S.2d 40 (2002) (managing agent of apartment building was liable to superintendent employed by building owner for injuries sustained as result of agent's failure to undertake repairs within its contractual obligation); see also *Marland* v. *Asplundh Tree Expert Co.*, Docket No. 1:14-CV-40 (TS), 2017 WL 639241, *1–2 (D. Utah February 16, 2017) (under Utah law, when power company had duty to prevent people from coming in contact with power line, and defendant contracted to undertake that duty on behalf of power company, defendant had duty to plaintiff who was injured as result of defendant's negligent performance of contractual undertaking under § 324A).

We consider these cases inapposite in the present circumstances, however, because each involves an undertaking party who takes on a *preexisting duty* already owed by the contracting party (the party hiring the undertaking party) to the plaintiff. In cases involving a preexisting (sometimes called a "pass-through") duty, the undertaking party is found to have the *same* duty to the injured person as the duty already owed by the contracting party itself. If Goodale had injured a patron or employee on the service plaza premises, for example, cases like *Gazo* would strongly support the conclusion that the defendants could be held liable for their negligent performance of the no alcohol/no loitering provisions because they undertook the DOT's preexisting duty "to keep its premises in a reasonably safe condition" for the benefit of invitees; (internal quotation marks omitted) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012); which includes the duty to protect invitees from the dangers created by allowing alcohol consumption on the premises. See *Merhi* v. *Becker*, 164 Conn. 516, 518–23, 325 A.2d 270 (1973) (when defendant union rented premises where it held picnic for union members and their guests, who were required to pay admission fee, and defendant failed to provide adequate security, defendant was liable when picnic attendee who had been consuming his own alcohol intentionally drove car toward third person and struck plaintiff, who was on premises); see also footnote 13 of this opinion. But this pass-through liabil-

ity, which is imposed by § 324A (b) of the Restatement (Second), is the one theory of liability under §324A that was unavailable to the plaintiffs in the present case, because the DOT itself had no preexisting duty to protect highway travelers from the risk of harm posed by intoxicated drivers off the premises of the service plaza. See, e.g., *Nolan* v. *Morelli*, supra, 154 Conn. 443 (when tortfeasor consumed alcohol on landowner's property, landowner had no duty to guard against injuries caused by tortfeasor at off premises location wholly outside of landowner's control).

With the pass-through cases distinguished, we have arrived at the true center of the parties' dispute regarding the existence of a duty owed by the defendants to the plaintiffs. The plaintiffs argue that a duty of care arose under the facts of this case because the defendants' contractual undertaking to prevent consumption of alcohol and loitering at the service plaza constituted "services to another which he should recognize as necessary for protection of a third person" under § 324A of the Restatement (Second) and, therefore, created a duty of reasonable care owed to the plaintiffs. The plaintiffs contend that *foreseeability* is the touchstone of duty under § 324A—once the defendants agreed to the undertaking, they assumed a duty of care to all persons who sustained physical harm as a foreseeable result of the defendants' negligent performance of that undertaking.

The defendants propose a very different duty analysis under § 324A of the Restatement (Second). They argue that their contractual obligation was limited to safeguarding patrons and employees of the service plaza at the service plaza, period. The defendants contend that, even if harm to passing motorists on the highway was foreseeable, nothing in the concession agreement reflects an *intention* to safeguard those travelers; no duty to those travelers arose because the *purpose* of the contractual undertaking was not to make the highway safe or to protect travelers on the highway.

After careful consideration, we cannot subscribe entirely to the duty analysis proposed by either side, although, due in part to the idiosyncratic features of the present case, we end up adopting an approach closer to the one proposed by the defendants. Our reservation concerning the defendants' argument is the undue weight it gives to the contractual origin of the duty owed to third parties under § 324A of the Restatement (Second). The third-party duty imposed under § 324A is implied in law. It is triggered in the first instance by a voluntary contractual (or gratuitous) undertaking, but the duty owed by the undertaking party under § 324A, once in existence, is not limited solely by reference to the underlying contract or defined solely by the intentions of the contracting parties. The duty of reasonable care imposed under § 324A exists regardless of whether

there is a contract (the undertaking may be gratuitous) or whether the plaintiff is a third-party beneficiary of the contract. The terms of a contract may be relevant to the existence and scope of an undertaking, but they do not determine whether a duty exists.[19] Courts construing § 324A consistently have observed that "liability . . . does not arise from, nor is it circumscribed by, the contract [but] arises, if at all, from [the defendant's] undertaking" to render services to protect another. *Thompson* v. *Bohlken*, 312 N.W.2d 501, 507 (Iowa 1981); see also *Davis* v. *Protection One Alarm Monitoring, Inc.*, 456 F. Supp. 2d 243, 251 (D. Mass. 2006) ("the scope of [the] defendant's duty to exercise due care cannot be limited merely to the precise boundaries of its contract, but instead are defined by the scope of the undertaking it is performing"); 2 Restatement (Third), supra, § 43, reporters' note to comment (h), p. 121 (although "[t]he existence of a contract may be relevant to the question of whether an undertaking exists . . . an undertaking does not require a valid contract, or indeed any contract, as gratuitous undertakings are sufficient" [citation omitted]). Although the contract may help to define the scope of the undertaking, "the congruence between the two need not be perfect," and the "ability of an injured party to recover [does not] rise or fall based on the exact language of the contract (or indeed [on] whether the parties had formed an enforceable contract at all) . . . ." *Davis* v. *Protection One Alarm Monitoring, Inc.*, supra, 251.

This concern, though substantial, does not lead us to conclude that the duty arising under § 324A of the Restatement (Second) extends to the outer limits of foreseeability, as the plaintiffs would have it. The plaintiffs' pure foreseeability model has superficial appeal because it is simple, it employs a familiar concept of foreseeability used in most negligence cases and, not insignificantly, it is tolerably compatible with the language of § 324A—"should recognize as necessary for protection of a third person . . . ."[20] Closer examination, however, gives rise to fundamental concerns that prevent us from adopting foreseeability as the sole determinant of duty under § 324A.

As we have observed, the precise terms of a contractual undertaking will not strictly delimit the extent of the legal duty to protect third parties under § 324A of the Restatement (Second), but it would be anomalous if the nature and scope of the contractual undertaking were wholly irrelevant to the nature and scope of the duties arising from it. The foreseeability reference in § 324A is not free-floating but instead is anchored to the reasonable expectations of the undertaking party *arising from the services to be performed*. See 2 Restatement (Second), supra, § 324A, p. 142 (referring to "services . . . which [the undertaking party] should recognize as necessary for the protection of a third person"). It makes good sense that the scope of the

duties will not be entirely independent of the scope of the undertaking when the undertaking is the original source of the duty. To summarize, under § 324A, the undertaking party not only will assume duties to third parties expressly set forth in the contract itself, as well as pass-through duties owed by the hiring party that are assigned or transferred to the undertaking party, but also will assume a duty of care to protect third parties from foreseeable, physical harm *within the scope of the services to be performed.*

Our conclusion in this regard is fully consistent with the historical origins of § 324A of the Restatement (Second) itself. Section 324A derives from the "modern" common-law rule, first adopted a century ago, that a defendant who undertakes to perform contractual services to another cannot raise a *nonprivity* defense against a third person who is injured by the defendant's negligent performance. See *Glanzer* v. *Shepard*, 233 N.Y. 236, 239, 135 N.E. 275 (1922) (Cardozo, J.) ("We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law . . . ."); see also *Artiglio* v. *Corning Inc.*, 18 Cal. 4th 604, 613, 957 P.2d 1313, 76 Cal. Rptr. 2d 479 (1998) (§ 324A embodies principle set forth in *Glanzer*); *Kaplan* v. *U.S. Bank, N.A.*, 166 S.W.3d 60, 70 (Mo. App. 2003) (§ 324A embodies "one of the [well recognized] exceptions to the privity rule"). The animating principle behind § 324A recognizes that many modern and contemporary social activities, including commercial activities flowing from contractual undertakings, may have foreseeable effects on strangers to the transaction, and the law sensibly imposes a duty of due care on the undertaking party to protect such persons who are put at increased risk by the negligent performance of the undertaking. The elimination of a privity defense, however, does not eliminate all *other* defenses that an undertaking party may have regarding the nature and scope of the duty imposed; nor does the elimination of privity expand the scope of the duty to third parties without limitation. Section 324A precludes a defendant from arguing that it owes no duty to third parties to the transaction merely because they are third parties. The defendant still can argue, however, that a particular third-party plaintiff belongs to a class that is outside the scope of protection afforded by § 324A due to the limited scope and nature of the particular undertaking at issue.

Under the circumstances of the present case, our task is simplified because the dispute regarding the scope of the duty arises in a very specific context involving third-party harm caused by a drunken motorist. Existing and well established Connecticut common-law rules provide significant guidance under these circumstances. As discussed previously, these rules, which the

plaintiffs do not request us to revisit or rescind, exhibit a strong policy against imposing negligence liability for off premises harm caused by drunk drivers. Indeed, the defendants would not be exposed to negligence liability even if they had been operating a bar or liquor store rather than a service plaza, and had poured Goodale the alcohol that caused him to become intoxicated that day. The question presented in these appeals is whether by undertaking a contractual obligation to prevent alcohol consumption and loitering on the premises of the service plaza, the foregoing background common-law assumptions were altered such that the defendants will be deemed to have undertaken an obligation to prevent the risk of harm posed to passing motorists by intoxicated drivers under § 324A of the Restatement (Second).

In our view, the same policy considerations underlying the preexisting Connecticut common law require, in the context of the present case, either an *express* contractual undertaking or evidence of an *unambiguous* intention on the part of the contracting parties before the law will impose a duty to protect third persons from off premises harm caused by an intoxicated driver. Unless there is sufficient evidence to support a jury finding that the contracting parties actually intended to depart from the preexisting liability rules, or some other basis for imposing a duty—e.g., a special caretaking or supervisory relationship between the defendant and either the primary tortfeasor or the victim—a landowner or possessor who undertakes to prevent the consumption of alcohol as part of its on premises responsibilities does not thereby incur a duty to protect third parties from off premises physical harm caused by a driver who became intoxicated before leaving the premises. The undertaking party's duty to protect third persons from off premises harm under these circumstances, in the absence of an express understanding between the contracting parties or an affirmative duty arising from some other source, is coextensive with the preexisting duty of the property owner under the common law. See *DiLullo* v. *Joseph*, 259 Conn. 847, 851, 792 A.2d 819 (2002) (determination as to appropriate default contract provision is based on policy considerations); *State* v. *King*, 361 Or. 646, 658, 398 P.3d 336 (2017) (contractual "[d]efault rules may be based on . . . basic principles of justice" [internal quotation marks omitted]).

In this regard, it is important to understand that the duty analysis under § 324A of the Restatement (Second) remains subject to policy based limitations. See *Ruiz* v. *Victory Properties, LLC*, supra, 315 Conn. 337 ("[t]he final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results" [internal quotation marks omitted]); see also *Premo* v. *General Motors Corp.*, 210 Mich. App. 121, 123–24, 533 N.W.2d 332 (1995) (holding that

Michigan public policy militated against imposing duty to third persons on employer who allowed intoxicated worker to drive away from workplace in alleged contravention of internal policy of preventing intoxicated employees from driving); 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 7 (b), p. 77 (2010) ("[i]n exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty"); 2 Restatement (Third), supra, § 43, comment (b), p. 115 ("[e]ven though an affirmative duty might exist pursuant to this [s]ection, a court may decide, based on special problems of principle or policy, that no duty or a duty other than reasonable care exists"). The common-law rules that govern the premises liability of a property owner or possessor in this context embody the public policy determinations of the courts and the legislature regarding the appropriate allocation of rights and obligations among the various parties. See *Munn* v. *Hotchkiss School*, supra, 326 Conn. 549 ("duty . . . is only an expression of the sum total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection" [internal quotation marks omitted]); see also *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 440, 820 A.2d 258 (2003) ("the doctrine of superseding cause involves a question of policy and foreseeability regarding the actions for which a court will hold a defendant accountable"). There may or may not come a time in the future when those common-law rules change in response to policy developments relating to the serious social problem of drunken driving. This case presents no occasion to consider the issue. In the absence of an express contractual provision or evidence of an unambiguous intention on the part of the contracting parties, we can perceive no reason why the policy considerations underlying our existing common-law rules of premises liability should automatically or presumptively be abrogated when a party's contract with a property owner includes an obligation to prevent alcohol consumption on the premises, without more. We therefore conclude that the duty proposed by the plaintiffs will not arise unless the parties to such a contract agree to expand the undertaking party's obligations beyond what is imposed by the existing law.

There is no evidence in the present case that the parties intended contractually to alter or extend the existing common-law rules holding that a party in the defendants' position has no duty to protect off premises travelers from the risks posed by intoxicated drivers who consumed alcohol while loitering at the service plaza. The contractual documents themselves do not mention or suggest the existence of any such duty. The documents establish only that Project Service undertook a contractual obligation to prohibit alcohol con-

sumption and loitering at the service plaza, to notify the police of any consumption of alcohol or loitering, and to train all subcontractors and employees of subcontractors to comply with those contractual obligations. There is no reference to highway travelers or their protection in connection with the no alcohol/no loitering provision.[21] Simply put, no aspect of the contract expresses an actual intention to protect highway motorists from the risk of harm created by alcohol consumption by individuals at the service plaza.

Nor does any extrinsic evidence presented by the plaintiffs demonstrate any such contractual intent. The plaintiffs submitted the deposition testimony of Paul Landino, the chief executive officer of Project Service, to support their contention that "[i]t was understood by Project Service . . . that the reason for [the no alcohol provision of the concession agreement] was the obvious danger to patrons of the service plaza and motorist on the adjacent . . . highway." Landino's testimony unquestionably supports the conclusion that the danger by its very nature is *foreseeable*, that is, that Project Service knew, or should have known, that a person who drove after consuming alcohol at the service plaza—or anywhere else—posed a foreseeable risk of harm to motorists on the roads. It is also reasonably clear that Project Service believed that preventing alcohol consumption at the service plaza could in one sense reduce the risk of such harm on the portion of the highway immediately adjacent to the service plaza.[22] But evidence that harm to motorists was a *foreseeable* result of the negligent failure to prevent alcohol consumption at the service plaza is not sufficient to establish that the no alcohol/no loitering provisions were included in the contract with the intention of protecting highway travelers. Because Connecticut common law clearly establishes a rule of nonliability in this context, the plaintiffs were required to demonstrate that the parties to the undertaking had an actual intention to protect motorists when they included the no alcohol/no loitering provisions in the concession agreement. On this record, no reasonable fact finder could conclude that the parties to the concession agreement had such a specific intent.

The plaintiffs also submitted evidence at the summary judgment stage showing that loitering and alcohol consumption were ongoing problems at service plazas in this state while Project Service was operating the service plaza. In one inspection report, the DOT advised the operator of a service plaza that it had removed a sleeping homeless person from the service plaza and that "the hassle free experience at this plaza is your responsibility." In another inspection report, the DOT noted that the manager of the McDonald's restaurant at a service plaza wanted the operator of the service plaza "to remove [a] homeless man as [his presence] reduces sales and makes potential customers uncom-

fortable." In yet another inspection report, the DOT advised the operator of a service plaza that a "drunk man was harassing one of the [McDonald's restaurant] employees at the drive [through] window." Other inspection reports noted the presence of panhandlers and beggars at service plazas. These inspection reports do not provide the necessary evidence of contractual intention to create a jury issue. To the contrary, they tend to confirm the defendants' position that the purpose of the no alcohol/no loitering provisions was to ensure the safety and comfort of customers and employees of the service plaza. The reports cast no light on whether there was a specific intention to protect highway travelers.

We conclude that the evidence presented by the plaintiffs was insufficient as a matter of law to support a finding that the contracting parties had the specific intent to protect passing motorists from the risk of harm created by the consumption of alcohol at the service plaza. Because we hold that proof of such an intention is required in the particular context of this case, we must reverse the judgment of the trial court with respect to the plaintiffs' negligence claims and remand the case with direction to render judgment in favor of the defendants on those claims.

We recognize that the plaintiffs and their families have suffered a horrible tragedy, through no fault of their own. The plaintiffs' harm was caused by a wrongdoer, Goodale, who is morally and legally culpable for the unspeakable loss caused by his conduct. Although we understand the plaintiffs' desire to hold accountable all entities who might have contributed to their loss, we conclude for the foregoing reasons that the imposition of liability on the defendants is inconsistent with the present state of Connecticut law. Accordingly, we must reverse in part the judgment of the trial court.

### III

It is unnecessary to reach the other grounds for reversal of the plaintiffs' negligence claims advanced by the defendants, but we do so briefly to demonstrate that the flaws contained in the plaintiffs' theory of liability run deep, and the judgment would not be saved even if we were to assume that Project Service undertook a duty to protect passing motorists from the risk of harm posed by intoxicated drivers. These additional grounds relate to the specific predicates to liability necessary under subsections (a) and (c) of § 324A of the Restatement (Second).

Section 324A (a) of the Restatement (Second) imposes liability only if the defendants' negligent conduct *increases* the risk of harm to the third party, in this case the passing motorists on I-395. See 2 Restatement (Second), supra, § 324A (a), p. 142 (person is liable for failure to perform undertaking with reasonable care if

"his failure to exercise reasonable care increases the risk of such harm"). The plaintiffs claim that the defendants increased the risk of harm to them by negligently performing their undertaking of preventing the consumption of alcohol at the service plaza. They contend that if the defendants had done their job properly, the harm would have been prevented, and so their negligent performance increased the risk of harm. The flaw in this logic is concisely identified in *Jain* v. *State*, 617 N.W.2d 293 (Iowa 2000), in which the Iowa Supreme Court, analyzing a virtually identical increased risk element found in § 323 of the Restatement (Second), observed that "the increase in the risk of harm required is not simply that which occurs when a person fails to do something that he or she reasonably should have. Obviously, the risk of harm to the beneficiary of a service is always greater when the service is performed without due care. Rather . . . [liability exists] only when the defendant's actions increased the risk of harm to [the] plaintiff relative to the risk that would have existed had the defendant never provided the services initially. Put another way, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun performance." (Citation omitted; internal quotation marks omitted.) Id., 299.

We find *Jain* persuasive as applied to the circumstances in this case and, therefore, reject the plaintiffs' suggestion that the negligent performance of an undertaking itself ordinarily will satisfy the increased risk requirement of § 324A (a) of the Restatement (Second). As the court in *Jain* recognized, under the plaintiffs' interpretation, the "increased risk" element contained in § 324A (a) would become an illusory requirement because the failure to exercise reasonable care when performing an undertaking that is necessary for the protection of third persons will *always* increase the risk to such persons over the level of risk that would have existed *if the undertaking were performed nonnegligently*. We agree with the court in *Jain* that, in the ordinary case under § 324A (a), a plaintiff must establish that the contracting party increased the risk of harm over the level of risk that would have existed if there had been no undertaking at all.[23]

There is no evidence in the present case that the defendants' acts or omissions did anything to increase the risk of harm within the meaning of § 324A (a) of the Restatement (Second). We reject, in this connection, the plaintiffs' claim that the defendants placed the plaintiffs in a worse position than they would have been in the absence of any undertaking because the defendants "made the [service] plaza an attractive option to Goodale" by permitting him to charge his cell phone in the convenience store, to use the restroom facilities and to purchase food. These allegations, even if true, do nothing to show that the conditions at the

service plaza became *more* dangerous under the defendants' operation than before Project Service engaged in the undertaking, or that the defendants made the service plaza a *more* attractive option to Goodale than it would have been if Project Service had never undertaken to prevent loitering and alcohol consumption in the first instance. Because there is no evidence that the plaintiffs were placed in a worse position than they would have been if there had been no undertaking in the first instance to prevent the consumption of alcohol at the service plaza, the increased risk requirement of § 324A (a) was not satisfied.

We likewise would conclude that liability under § 324A (c) of the Restatement (Second) has not been established on this record because there is insufficient evidence that either the DOT or passing motorists relied on the defendants to protect travelers on I-395. See 2 Restatement (Second), supra, § 324A (c), p. 142 (person is liable for failure to perform undertaking with reasonable care if "the harm is suffered because of reliance of the other or the third person upon the undertaking"). The plaintiffs assert that Demond and Crouch "likely would have avoided I-395 had they known [that] Project Service . . . [was] allowing an intoxicated alcoholic to live out of his car at the service plaza" but have cited no evidence that would support such a finding. Nothing in the record establishes that Demond or Crouch believed that alcohol consumption at the service plaza was not permitted or that they would have avoided I-395 if they had been aware that the defendants could not always be depended on to enforce such a prohibition.

A more substantial question under § 324A (c) of the Restatement (Second) is whether the DOT, by requiring Project Service and its subcontractors to prohibit loitering and alcohol consumption on the premises, relied on them to protect drivers on I-395 from the physical harm caused by drivers who might become intoxicated by consuming alcohol at the service plaza. It is not inconceivable to us that the DOT might wish to pursue the laudable goal of enhancing highway safety by including a provision, expressly reflecting that intention, in its service plaza concession agreements. If it did so, and if the undertaking party agreed, then, assuming that the DOT has authority to impose such a contractual term,[24] the DOT's reliance on the undertaking party's performance presumably would trigger the undertaking party's liability to third parties under § 324A (c). But there is no evidence of any such intention here, as we previously have discussed in our duty analysis. The no alcohol/no loitering provisions say nothing about highway safety, there is nothing elsewhere in the contract to support a conclusion that the provisions were intended to enhance highway safety, and no witness testified that the DOT included the provisions to further that objective or relied on the defendants to help achieve it. Again, in the absence of such evidence, we

will not presume reliance under the circumstances of this case in light of the well established, preexisting common-law rules that inform our analysis.

In summary, we conclude that the defendants' undertaking to prevent alcohol consumption and loitering at the service plaza, standing alone, did not constitute an undertaking to protect passing motorists from the risk of harm created by persons who consumed alcohol at the service plaza and then drove, thereby giving rise to a duty to such motorists under § 324A of the Restatement (Second). We also conclude that the plaintiffs have not established that the defendants increased the risk of harm to them within the meaning of § 324A (a), or that the plaintiffs or the DOT relied on the undertaking for the purposes of § 324A (c). Accordingly, we conclude that the trial court improperly denied the defendants' motions to set aside the verdict and to render judgment in their favor on the plaintiffs' negligence claims, and we reverse the judgment as to those claims.

IV

We next address the plaintiffs' claim that the trial court improperly granted summary judgment in favor of the defendants on the plaintiffs' public nuisance claims. The plaintiffs contend that the defendants created a public nuisance by creating "an environment that allowed and encouraged Goodale to loiter and [to] consume alcohol at the . . . service plaza for over a week."[25] We affirm the judgment of the trial court on this claim.

The standard of review is not disputed. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 290, 87 A.3d 534 (2014).

The substantive law governing public nuisance claims is also well established. "Section 821B of the Restatement (Second) of Torts defines a public nuisance as 'an unreasonable interference with a right common to the general public.' . . . Whether an interference is unreasonable in the public nuisance context depends, according to the Restatement (Second), on '(a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . .' 4 Restatement (Second), [Torts] § 821B [p. 87, (1979)].

The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake. Id., § 821D, comment (c) [p. 101]." (Citation omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 356 n.5, 788 A.2d 496 (2002).

"To prevail [on] a claim for public nuisance . . . a plaintiff must prove the following elements: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. . . . In addition, the plaintiff must prove that the condition or conduct complained of interferes with a right common to the general public. . . . Nuisances are public where they . . . produce a common injury . . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Citation omitted; internal quotation marks omitted.) *Shukis* v. *Board of Education*, 122 Conn. App. 555, 586–87, 1 A.3d 137 (2010).

In *Quinnett* v. *Newman*, supra, 213 Conn. 348, this court considered the question whether "the sale of substantial amounts of alcohol to one who thereafter operates a motor vehicle upon a public highway is analogous to the types of acts that have been held to be public nuisances." We concluded that this type of conduct by one in possession of land does not give rise to a public nuisance for the same reason that it does not give rise to a claim for negligence, namely, that the proximate cause of the plaintiff's decedent's death was the intoxicated motorist's "own immoderate use of the alcohol and not in its service to him by the defendant sellers." Id., 349.

The plaintiffs attempt to distinguish *Quinnett* on the ground that, in that case, "the inherently dangerous condition claimed to constitute a nuisance [was] the intoxicated adult operator of the motor vehicle"; id.; whereas, in the present case, the claimed dangerous condition was the "creation of an environment that allowed and encouraged Goodale to loiter and [to] consume alcohol at the highway service plaza for over a week." The supposed distinction does not survive examination on this record. As we have indicated, the plaintiff in *Quinnett* contended that the defendants' "*sale* of substantial amounts of alcohol to one who thereafter operates a motor vehicle upon a public highway" created a public nuisance. (Emphasis added.) Id., 348. Our statement that the *intoxicated driver* was the "inherently dangerous condition claimed to constitute a nuisance" merely recognized that the defendants' sale of liquor, *in and of itself*, was not dangerous. To the

extent that the defendants' conduct contributed to the creation of the dangerous condition (i.e., the intoxication of the motorist), their liability was cut off by the intoxicated motorist's own choice to consume alcohol immoderately and then drive. See id., 349; see also *Bohan* v. *Last*, supra, 236 Conn. 676 ("Although we have never held that [landowners who purvey alcohol to social guests] have no [common–law] duty to exercise due care to protect the foreseeable victims of those who drink and drive, we have, nonetheless, declined to recognize a claim in negligence. Such a claim has uniformly failed for the reason that the subsequent injury has been held to have been proximately caused by the intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury." [Internal quotation marks omitted.]); *Ely* v. *Murphy*, 207 Conn. 88, 93, 540 A.2d 54 (1988) ("At common law it was the general rule that no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it." [Internal quotation marks omitted.]). Similarly, in the present case, even if we assume that the defendants' conduct in allowing Goodale to live and consume alcohol at the service plaza contributed to the "dangerous condition" (i.e., Goodale's presence at the service plaza in an intoxicated state), established legal principles in Connecticut, which the plaintiffs have not asked us to overrule, deem the sole proximate cause of the crash to be Goodale's choice to consume alcohol immoderately and then drive on I-395. We conclude, therefore, that the trial court properly granted the defendants' motions for summary judgment on the plaintiffs' public nuisance claims.

The judgment is reversed with respect to the plaintiffs' claims for negligence and the case is remanded with direction to render judgment for the defendants as to those claims; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

* These appeals originally were argued before a panel of this court consisting of Justices Palmer, McDonald, Robinson, D'Auria, Mullins and Kahn. Thereafter, Justice Ecker was added to the panel and has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision. The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] Section 324A of the Restatement (Second) provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting

from his failure to exercise reasonable care to [perform] his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." 2 Restatement (Second), Torts § 324A, p. 142 (1965).

We note that the language in the introductory portion of this section, "to [perform] his undertaking," apparently included a typographical error and used the word "protect" instead of "perform." See *Hill* v. *United States Fidelty & Guaranty Co.*, 428 F.2d 112, 115 n.5 (5th Cir. 1970) ("[t]he reporter for this edition of the Restatement, by a letter to counsel furnished to this court, has verified that the word 'protect' which appears at this point is a typographical error and should read 'perform' ").

Section 324A of the Restatement (Second) and the accompanying commentary were substantially revised by § 43 of the Restatement (Third) of Torts, published in 2012. See 2 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 43, p. 114 (2012). For reasons not apparent from the record, the parties have neither cited nor relied on § 43 at any stage of this litigation. We decide the case as it was litigated, and, although we refer to § 43 and related provisions of the Restatement (Third) on occasion to help cast light on the construction and application of § 324A, we offer no definitive ruling as to whether we would adopt § 43 if asked to do so, or the effect that adopting § 43 might have on our analysis.

[2] The jury awarded damages to the plaintiffs in the amount of $1,835,000, and apportioned the defendants' negligence as follows: 40 percent to Project Service and 20 percent each to the other three defendants. The trial court thereafter granted the plaintiffs' motion for additur, increasing the total damages award to $5,347,000. The plaintiffs accepted the court-ordered additur on August 18, 2016.

[3] The parties filed their appeals in the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The concession agreement required Project Service to "provide all applicable . . . safety . . . safeguards for operations of the [service plaza] . . . that are required . . . to protect the health, safety and welfare of the public, [e]mployees, [the DOT] and its employees and any [DOT] [r]epresentatives and any of the [s]tate's [r]epresentatives in accordance with all applicable [l]egal [r]equirements." The concession agreement also provided that Project Service "shall not . . . allow the . . . consumption of any intoxicating or alcoholic beverages or any fermented ale, wine, liquor or spirits in any part of the [service plaza]." In addition, the safety plan that was incorporated into the concession agreement provided that "Project Service . . . has made a commitment to provide a drug and alcohol-free workplace. . . . The use, possession of open containers, personal sale, transfer, or acceptance of alcohol on Project [Service's] property is strictly prohibited. Project Service . . . has the right to remove from, or deny access to, our stores anyone on our property under the influence of [a]lcohol, and/or consuming [a]lcohol on our property. Project [Service's] [f]acilities [m]anager may report illegal activity to the appropriate law enforcement authorities." The safety plan also required Project Service and its subcontractors to "[l]ook for anyone who may be watching or loitering in or around the [service plaza]." The consumption of alcohol and loitering were considered to be emergencies requiring Project Service and its subcontractors to call the state police. The trial court found that the no alcohol/no loitering provisions were included as part of various safety plans, operation manuals and downstream subcontracts binding on Alliance and 4MM.

[5] The complaint also named O, R & L Facility Services, LLC, and Global Partners, LP, as defendants. The claims against those defendants were disposed of before trial and are not at issue in these appeals.

[6] At trial, the jury was instructed that Project Service could be held liable to the plaintiffs under § 324A (a) or (c) of the Restatement (Second), but not under subsection (b). Subsection (b) is strictly a "pass-through" provision, which, as we discuss subsequently in this opinion, imposes liability on an undertaking party based on that party's assumption of a preexisting duty owed by the original duty holder. See 2 Restatement (Second), Torts § 324A (b), p. 142 (1965). Subsection (b) evidently was charged out of this case because the plaintiffs made no claim that the original duty holder, the DOT, had a preexisting duty to protect them from the risk of harm created by

persons who consumed alcohol at the service plaza and then drove onto the highway. Although the jury was instructed that it could not hold Project Service liable under subsection (b) of § 324A, no such instruction was provided as to Alliance or 4MM. To the contrary, the jury interrogatories and verdict form permitted the jury to find Alliance and 4MM liable under § 324A (b) for their negligent performance of a duty owed to the plaintiffs by either Project Service *or* the *DOT*. The record does not disclose why the jury was informed that Alliance and 4MM might have a duty arising from the DOT's duty to the plaintiffs when the parties believed that Project Service had no such duty.

[7] The trial court gave the following instructions to the jury on this issue: "[T]he defendants have a legal duty to the plaintiffs arising out of the contracts with the [s]tate of Connecticut, and . . . [the DOT], and with each other."

"Project Service contractually undertook to render services to the [s]tate of Connecticut. Those services were defined by the [c]oncession [a]greement and the [s]afety [p]lan. Project Service had to perform its contractual obligations with reasonable care to avoid creating or increasing the risk of physical harm to a third person, *such as the plaintiffs*. The contractual obligations include adequate training and supervising its employees to report and respond to the consumption of alcoholic beverages, an intoxicated person, and/or allowing or permitting a person to live/loiter on the [service area] . . . . *Its legal duty is defined by its contractual undertakings*." (Emphasis added.)

The trial court also instructed the jury as follows with respect to § 324A of the Restatement (Second): "An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to which a third party is exposed, *such as the plaintiffs, has a duty of reasonable care to the third person, the plaintiffs*, in conducting the undertaking if:

"(a) failing to exercise reasonable care increases the risk of harm beyond that which existed without the undertaking, or

"(b) the actor has undertaken to perform a duty owed by the other to a third person, or

"(c) the persons to whom the services are rendered, the third party, or another relies on the actor's exercising reasonable care in the undertaking.

"If Project Service, through its agents, servants, or employees negligently performed those services or contractual undertakings, as alleged by the plaintiffs, when it knew or should have known that the contractual duties were intended or designed to reduce the risk of physical harm *to which the travelers on the adjacent interstate highway, such as the plaintiffs*, were exposed, and

"(a) Project Service's failure to exercise reasonable care increases the risk of harm beyond that which existed without the undertaking, or

"(b) the person to whom the services are rendered, [the DOT], the third party, such as the plaintiffs, or another relies on Project Service's exercising reasonable care in the undertaking, *then Project Service violated the duty of care owed to the plaintiffs and is negligent*." (Emphasis added.) The court gave substantially similar jury instructions regarding the liability of Alliance and 4MM under § 324A of the Restatement (Second), with the additional instruction that those defendants could be held liable pursuant to the pass-through provision of § 324A (b) because they undertook to perform Project Service's contractual duties. See footnote 6 of this opinion.

In his closing argument to the jury, counsel for the plaintiffs made certain that the jury did not overlook this point, telling the jurors that the trial court was going to charge them that Project Service "had a legal duty to the plaintiffs arising out of the [contract] with the [DOT] . . . ."

[8] The jury interrogatories provide in relevant part: "1. Have the plaintiffs proven by a preponderance of the evidence that Project Service . . . through its agents, servants, or employees negligently performed the services or contractual undertakings described by the concession agreement and safety plan, as alleged by [the] plaintiffs, when it knew or should have known that the contractual duties were intended or designed to reduce the risk of physical harm to which the travelers on the adjacent interstate highway, such as the plaintiffs, were exposed, and

"(a) Project Service's failure to exercise reasonable care in undertaking or performing their contractual duties created or increased the risk of harm beyond that which existed without the undertaking?

"YES   NO   (Circle your response)
"AND/OR

"(b) the person/entity to whom the contractual services were rendered, [the DOT], the plaintiffs, or another relied on Project [Service's] exercising reasonable care in the undertaking or performing of [its] contractual duties, such that Project Service violated the duty of care owed to the plaintiffs and is negligent?

"YES   NO   (Circle your response)."

The jury interrogatories included substantially similar instructions with respect to Alliance and 4MM, with an additional instruction allowing the jury to find those defendants liable pursuant to the pass-through provision of § 324A (b) of the Restatement (Second). See footnote 6 of this opinion.

[9] We note that the jury was never asked to make a finding as to the scope of the defendants' undertaking or the contractual intent of the parties.

[10] The plaintiffs also contend that the trial court improperly applied the nondelegable duty doctrine to the jury's allocation of negligence. We do not address this contention because we conclude that the trial court improperly denied the defendants' motions to direct a verdict in their favor on the negligence claims and properly granted summary judgment on the public nuisance claims.

[11] For the sake of clarity and simplicity, we focus our analysis hereinafter on the question of whether Project Service, the general contractor, owed any duty or incurred any liability to the plaintiffs arising from its performance under the no alcohol/no loitering provisions in the concession agreement. On the facts of this case, the duties and liabilities of the other defendants derived from Project Service's undertaking. See footnote 4 of this opinion. Accordingly, if Project Service had no duty or liability to the plaintiffs, then it necessarily follows that the other defendants had no duty or liability to the plaintiffs. In light of our conclusion that Project Service owed no duty and incurred no liability to the plaintiffs, we need not consider the secondary argument of Alliance and 4MM that they did not owe the plaintiffs a duty even if Project Service did.

[12] Three observations should be noted at this point to avoid unnecessary analytical confusion. First, the discussion here is focused on the threshold question of whether a *duty* is owed to plaintiffs under § 324A of the Restatement (Second), not the question of establishing *liability* once that duty is found to exist. If a duty is owed, liability under § 324A for breach of the duty is determined by reference to subsections (a), (b) and (c) of § 324A. But the duty question comes first under § 324A, the same as it does in other areas of tort law, and this threshold inquiry must not be overlooked in cases under § 324A in which the scope of that duty is disputed. Second, as we discuss subsequently in this opinion, as in other areas of tort law, there are some circumstances in which policy considerations will be dispositive of the duty analysis, regardless of what conclusion would follow under § 324A alone. Third, it is important to keep in mind that an undertaking party can acquire an "ordinary" duty of care to others, directly and without regard to § 324A, by acts or omissions that *create* (rather than only increase) a risk of harm to others. See 2 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 43, comment (d), p. 115 (2012) (distinguishing acts that *increase* risk of harm, which are controlled by revised version of § 324A, and acts that create risk of harm, which are governed by usual rules governing negligence).

[13] To be clear, the discussion here related to a duty to protect in the context of off premises harm. There are other premises liability rules imposing liability on the possessor of land for harm caused by the conduct of a third person on the premises. See, e.g., 2 Restatement (Second), supra, § 344, pp. 223–24 ("[a] possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals"); see also *Merhi* v. *Becker*, 164 Conn. 516, 520, 325 A.2d 270 (1973).

[14] This rule does not apply when a property owner knowingly allows minors to consume alcohol on his or her property. See *Bohan* v. *Last*, 236 Conn. 670, 681, 674 A.2d 839 (1996) ("[i]n appropriate circumstances, adults have a duty to refrain from negligently or intentionally supplying alcohol to minors, whether such adults act as social hosts in their homes or as purveyors in a bar, because minors are presumed not to have the capacity to understand fully the risks associated with intoxication").

[15] Connecticut's Dram Shop Act, General Statutes § 30-102, governs the liability of commercial entities that *sell* alcohol to intoxicated persons. General Statutes § 30-102 provides in relevant part: "If any person, by such person or such person's agent, sells any alcoholic liquor to an intoxicated

person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of two hundred fifty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of two hundred fifty thousand dollars, to be recovered in an action under this section . . . ."

[16] We recognize that these cases were decided on "causation" rather than "duty" grounds. See *Bohan* v. *Last*, supra, 236 Conn. 676 ("Although we have never held that [landowners who purvey alcohol to social guests] have no [common-law] duty to exercise due care to protect the foreseeable victims of those who drink and drive, we have, nonetheless, declined to recognize a claim in negligence. Such a claim has uniformly failed for the reason that the subsequent injury has been held to have been proximately caused by the intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury." [Internal quotation marks omitted.]). Both doctrines, however, are driven in significant part by considerations of policy, separate and apart from the foreseeability of harm, and it is fair to say that the causation doctrine developed in these cases is based primarily on policy considerations. For this reason, it is difficult to perceive any meaningful distinction between a doctrine holding that landowners have no duty to prevent harm to roadway travelers caused by drunk drivers and one holding that landowners have such a duty but their liability is categorically barred by the intervening act of the drunk driver.

[17] We address later in this opinion the plaintiffs' contention that, even if Project Service may not be held liable to the plaintiffs merely because it undertook to prevent alcohol consumption at the service plaza, it may be held liable because the parties to the concession agreement *specifically intended* to alter the common-law rule that a person in control of a property may not be held liable for injuries caused by a person who consumed alcohol on the property and then drove.

[18] Under Florida law, "a public or private entity which owns, operates, or controls a property, including a roadway, owes a duty to maintain that property, and a corresponding duty to warn of and correct dangerous conditions thereon." *Pollock* v. *Dept. of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004).

[19] If the intentions of the contracting parties controlled exclusively, then there would be no need for § 324A of the Restatement (Second); we would ask only whether the motorists on I-395 were third-party beneficiaries of the concession agreement. See *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 580, 833 A.2d 908 (2003) ("[t]he ultimate test to be applied [in determining whether a person has a right of action as a third-party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the [third-party beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties" [internal quotation marks omitted]). Section 324A exists because contractual principles alone have been deemed insufficient to provide adequate protection to those at risk of harm. See *Gazo* v. *Stamford*, supra, 255 Conn. 253–58 (holding that defendant had duty to plaintiff under § 324A, even though plaintiff was not third-party beneficiary of contract); *Jenkins* v. *Best*, 250 S.W.3d 680, 695 (Ky. App. 2007) (defendant that agreed to provide perinatal services to hospital owed tort duty to patient based on § 324A even though patient was not third-party beneficiary of contract).

[20] A pure foreseeability model of duty is "tolerably compatible" with the relevant language of § 324A of the Restatement (Second) because the Restatement (Second) refers to "services to another which the [undertaking party] should recognize as necessary for the protection of [others] . . . ." 2 Restatement (Second), supra, § 324A, p. 142. The phrase "should recognize as necessary" is not a standard utilized in tort law, and its meaning is unclear. Cf. 1 Restatement (Second), Torts § 11, p. 19 (1965) (defining "reasonably believes" as used throughout Restatement); id., § 12, pp. 19–20 (defining "reason to know" and "should know"). Moreover, the commentary to § 324A provides no assistance in ascertaining the intended meaning. Courts appear to assume, without particularized analysis, that the phrase simply requires foreseeability of the third-party harm. See, e.g., *Davis* v. *Protection One Alarm Monitoring, Inc.*, supra, 456 F. Supp. 2d 249–52 (citing § 324A in support of proposition that one who assumes contractual duty must perform that duty with reasonable care to third parties who are foreseeably exposed

to danger and injured as result of negligent performance); *Platson* v. *NSM, America, Inc.*, 322 Ill. App. 3d 138, 151, 748 N.E.2d 1278 (2001) ("[w]e hold . . . that [§] 324A would impose liability for [the defendant's] failure to protect [the] plaintiff against such dangers provided they were reasonably foreseeable when [the defendant's] omission occurred"); *Cantwell* v. *Allegheny County*, 506 Pa. 35, 41, 483 A.2d 1350 (1984) ("[t]his is essentially a requirement of foreseeability"); *Kuehl* v. *Horner (J.W.) Lumber Co.*, 678 N.W.2d 809, 813 (S.D. 2004) (reversing summary judgment in defendant's favor based on conclusion that "material issues of fact [exist] as to [the defendant's] assistance in loading the trailer for travel on a public highway and [its] failure to use reasonable care thereby increasing a foreseeable risk of harm to the public"); *Stephenson* v. *Universal Metrics, Inc.*, 251 Wis. 2d 171, 190, 641 N.W.2d 158 (2002) ("As this court has applied it, the framework of § 324A comports with Wisconsin's principles of negligence law. The basic principle of duty in Wisconsin is that a duty exists when a person fails to exercise reasonable care—when it is foreseeable that a person's act or omission may cause harm to someone."). In *Gazo* v. *Stamford*, supra, 255 Conn. 245, in which we adopted the principles of liability contained in § 324A (b), this court itself also underscored the important role that foreseeability plays in the extension of negligence liability to contractors. Id., 254; see id. ("[a]lthough we agree that contractors may be liable to parties whom they could not have necessarily identified specifically when entering into the original contract, they always have had a duty to perform their work in a nonnegligent manner, and our conclusion does no more than to hold contractors liable to those parties foreseeably injured by their negligence").

[21] In a different portion of the concession agreement, Project Service agreed to "maintain and control the [service plaza] in such a manner that *neither* [*Project Service*] *nor any* [*s*]*ubcontractor shall . . . intentionally impede or endanger the safe and orderly flow of traffic in and along the* [*r*]*oadways*," including I-395. (Emphasis added.) This latter provision has no connection to the no alcohol/no loitering provisions and, therefore, has no bearing on our analysis.

[22] Landino testified as follows:

"Q: Do you have an understanding as to why it is that the consumption of alcohol is prohibited on the Montville service plaza premises?

\* \* \*

"A. Yes.

"Q. Why is that?

"A. Obviously, driving and drinking is not a healthy thing to partake in.

"Q. So, I'm sure this is obvious, but so we get it clear on the record, you were aware and you understood that drinking alcohol and driving is a serious danger?

"A. Yes, sir.

"Q. And it poses even greater dangers on a highway service plaza, correct?

"A. It's bad everywhere.

"Q. I assume you were aware and you would agree that at all times prior to March 9 of 2012, you knew that the consumption of alcohol on the premises of the Montville service plaza not only posed a risk of harm to patrons at the plaza itself, but also to individuals on the highway as people would leave the plaza, correct?

"A. Absolutely.

"Q. . . . I noticed in a number of the documents, the bid proposal for instance was one of them, this document, there was an emphasis on the safety of motorists traveling on the highways in the immediate vicinity of the rest area.

"A. Yes.

"Q. You've seen that, correct?

"A. Yes, yes.

"Q. And that was and continues to be a primary concern of Project [Service], correct?

"A. Absolutely.

\* \* \*

"Q. It is their responsibility if there is a consumption of alcohol on the property to follow the action plan that's set out for the employee, correct?

"A. That's correct.

"Q. And there is an awareness that if there's a failure to do that, that there is a serious danger to the motorists passing on the highway, correct?

"A. I would say there would be or could be."

On appeal, the plaintiffs also rely on the following trial testimony given

by Landino:

"Q. And there was an awareness that if there was a failure to follow that emergency action plan, if there was a consumption of alcohol, that there is a serious danger to the motorists passing on the highway, true?

"A. Yes."

* * *

"Q. And you were aware, were you not, that if there was a failure to follow this action plan in the presence of consumption of alcohol at the Montville plaza as of March 9 of 2012, that there was a serious danger to passing motorists on the highway, true?

"A. There could be, yes."

* * *

"Q. And isn't it true, and you told me this in your deposition, and you reiterated it when I was asking you questions, that you were aware, and Project Service was aware, that . . . if they failed to control [the consumption of alcohol and living at the service plaza], that there was a serious danger or could be a serious danger to motorists on the passing highway; isn't that what you told me?

"A. Yes, sir."

[23] The Restatement (Third) points out that proof of reliance under § 324A (c) of the Restatement (Second) may also satisfy the "increase the risk of harm" requirement of subsection (a) of the Restatement (Second). See 2 Restatement (Third), supra, § 42, comment (f), p. 94 (increase in risk may be established by proving that "the plaintiff or another relied on the actor's performing the undertaking in a nonnegligent manner and declined to pursue an alternative means for protection"); see also id., § 43, comment (e), pp. 115–16 ("Reliance on an undertaking is another way in which the risk of harm may be increased. An undertaking may create an appearance of safety or make alternative arrangements appear unnecessary."). We address the issue of reliance separately in the text of this opinion.

[24] Alliance contended at oral argument before this court that, in the absence of action by the legislature, the DOT could not lawfully impose a contractual duty to protect third persons that is broader than the duty to protect third persons existing under the common law. In light of our resolution of the case, we need not address Alliance's contention.

[25] Alliance contends that the plaintiffs were not aggrieved by the trial court's granting of summary judgment in favor of the defendants on the public nuisance claims because the plaintiffs prevailed on their negligence claims and, therefore, this court lacks jurisdiction to entertain the plaintiffs' appeal. See, e.g., *Jones* v. *Redding*, 296 Conn. 352, 366, 995 A.2d 51 (2010) ("[A] litigant has no right to appeal a judgment in his or her favor merely for the purpose of having the judgment based on a different legal ground than that relied upon by the trial court, or to settle an abstract question of law. . . . Additionally, [a]s a general proposition, a party who has fully prevailed in the court below is not entitled to appeal from the judgment solely for the purpose of attacking as erroneous the reasons of the court or its conclusions of law." [Citation omitted; internal quotation marks omitted.]); see also *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91, 971 A.2d 1 (2009) ("[i]f a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause" [internal quotation marks omitted]). At oral argument before this court, Alliance contended that the plaintiffs would not be aggrieved by the trial court's ruling on the public nuisance claims even if the defendants prevailed in their appeals challenging the trial court's denial of their motions for a directed verdict in their favor on the negligence claims. We disagree. Our reversal of the judgment in the plaintiffs' favor on the negligence claims and our remand to the trial court with direction to render judgment for the defendants as to those claims places the plaintiffs in the same position they would have occupied if the trial court had ruled against them on those claims. If the defendants had prevailed on all counts, the plaintiffs obviously would have been entitled to appeal the adverse rulings on all counts, whether the rulings had come at the same time or at different stages of the proceedings in the trial court. It would make no sense to conclude that the trial court's erroneous ruling on the negligence claims somehow bars the plaintiffs' appeal from the court's earlier ruling against them on the public nuisance claims.