******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NADINE WYLIE, ADMINISTRATRIX (ESTATE OF
KEITH WYLIE) *v.* APT FOUNDATION, INC.
(AC 46061)

Cradle, Seeley and Norcott, Js.

*Syllabus*

The plaintiff, acting in her capacity as the administratrix of the estate of
the decedent, appealed to this court from the judgment rendered by the
trial court for the defendant following the granting of the defendant's
motion to strike her operative complaint. The defendant operated a
center for drug rehabilitation and provided methadone treatment for
opioid dependent patients at its premises. As the decedent began to
walk up the public sidewalk toward the entrance to the defendant's
driveway, an individual approached and fatally stabbed the decedent
directly in front of the defendant's premises. The plaintiff brought an
action for wrongful death, setting forth claims of, inter alia, public
nuisance. The plaintiff alleged, inter alia, that local residents had devel-
oped concerns regarding loitering, drug use, crime, prostitution, and
public defecation on private property in the immediate vicinity sur-
rounding the defendant's premises, that the defendant created a magnet
for criminal activity in the immediate vicinity surrounding the premises
by providing a methadone treatment program without also providing
for proper security, and that over the nine month period immediately
preceding the decedent's death the police responded to forty-two com-
plaints of criminal activity in the area. In its motion to strike, the defen-
dant noted that the complaint alleged that the stabbing occurred on the
public sidewalk that the defendant neither owned nor controlled and
claimed that the allegations set forth in the operative complaint did not
support the claims that the operation of a methadone clinic at the
premises had a natural tendency to create danger and to inflict injury
on public property or that the defendant's use of its property was unrea-
sonable or unlawful. *Held* that the trial court properly granted the defen-
dant's motion to strike the public nuisance claim as alleged in the
plaintiff's operative complaint: this court concluded that the defendant's
premises did not have a natural tendency to create danger and to inflict
injury as, although the conditions alleged to be existing in the immediate
vicinity of the premises in the operative complaint were not pleasant
and may have been dangerous, they did not imbue the premises itself
with a natural tendency to create danger and to inflict injury; moreover,
the allegations in the plaintiff's operative complaint failed to provide
the necessary factual basis to support her claim of a public nuisance,
as referencing the numerous police responses to the premises in a given
time period did not establish whether those responses were due to the
defendant's operation of its drug rehabilitation center or whether the
police responses were related to individuals on the defendant's premises,

and the plaintiff's conclusory assertion regarding the lack of proper security was not sufficient to set forth a claim of public nuisance.

Argued January 16—officially released June 18, 2024

*Procedural History*

Action to recover damages for, inter alia, public nuisance, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wilson, J.*, granted the defendant's motion to strike; thereafter, the court, *Wilson, J.*, granted the defendant's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Matthew D. Popilowski*, for the appellant (plaintiff).

*Steven J. Zakrzewski*, with whom were *Kelcie B. Reid* and, on the brief, *John J. Robinson*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiff, Nadine Wylie, acting in her capacity as the administratrix of the estate of Keith Wylie (decedent), appeals from the judgment rendered by the trial court in favor of the defendant, APT Foundation, Inc., following the granting of a motion to strike her amended substitute complaint dated July 21, 2021. On appeal, the plaintiff claims that the court improperly concluded that she failed to allege sufficient facts to support her public nuisance claim. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as alleged in the plaintiff's amended substitute complaint and construed in the manner most favorable to sustaining its legal sufficiency,[1] and procedural history are relevant to our discussion. The defendant operated a center for drug rehabilitation and provided methadone treatment for opioid dependent patients at 495 Congress Avenue in New

---

[1] See, e.g., *Doe* v. *Cochran*, 332 Conn. 333, 328, 210 A.3d 469 (2019); *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117, 889 A.2d 810 (2006).

Haven (premises). In 2017, the decedent was in a relationship with K, who was receiving treatment at the premises for her drug addiction. The decedent regularly accompanied K to her appointments at the premises. At some point, the decedent ended his relationship with K and, in September, 2017, commenced a new relationship with A, who also was receiving treatment at the premises. K, who attended group therapy with A, was unhappy about the decedent's new relationship and she entered into a romantic relationship with Daniel Streit.

On multiple occasions between September and October, 2017, the decedent was on the premises while visiting A, as was permitted by the defendant's patient handbook. During each of these occasions, Streit approached the decedent and a physical fight ensued. Despite the animosity between the decedent and Streit, the defendant did not take any action against K.

On October 7, 2017, the decedent traveled to the premises to visit A. Streit, wearing purple latex gloves and holding a knife, was waiting for the decedent at the end of the driveway leading to the parking lot of the premises. The defendant owned, controlled and/or maintained the driveway. As the decedent began to walk up the sidewalk toward the entrance to the driveway, Streit approached him. A physical altercation ensued and resulted in Streit fatally stabbing the decedent on the public sidewalk directly in front of the premises.

The plaintiff thereafter brought this wrongful death action[2] against the defendant pursuant to General Stat-

---

[2] The plaintiff commenced this action on August 27, 2019. The plaintiff filed a revised complaint on January 14, 2020. The defendant moved to strike the revised complaint on February 13, 2020. On May 15, 2020, the plaintiff requested leave to file an amended complaint. On August 14, 2020, the plaintiff requested leave to file a second amended complaint. One month later, the defendant moved to strike the second amended complaint, and the court granted this motion on April 15, 2021. The plaintiff then filed a substitute complaint on April 30, 2021, and, on July 21, 2021, requested leave to file an amended substitute complaint, which the court granted over the defendant's objection.

utes § 52-555.[3] In a two count amended substitute complaint, the plaintiff set forth claims of negligence and public nuisance.[4] With respect to the negligence count, the plaintiff generally alleged that the defendant failed (1) to provide adequate security for the premises and surrounding area, (2) to remove and prevent Streit from loitering, and (3) to recognize and remedy the hostilities between the decedent, Streit, K, and A, which ultimately resulted in the decedent suffering lethal injuries.

As to the public nuisance count, the plaintiff alleged that local residents have developed concerns regarding loitering, drug use, crime, prostitution, and public defecation on private property in the immediate vicinity surrounding the premises. Next, she alleged that the defendant "created a magnet for criminal activity in the immediate vicinity surrounding the premises by providing a methadone treatment program without also providing for proper security, safety protocols, and monitoring of its facility, its patients, and the immediate

---

[3] General Statutes § 52-555 (a) provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of."

[4] "Public nuisance is a tort, defined as an unreasonable interference with a right common to the general public." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 231 n.7, 131 A.3d 771 (2016). Our Supreme Court has explained: "Public nuisance law is concerned with the interference with a public right, and cases in this realm typically involve conduct that allegedly interferes with the public health and safety." (Internal quotation marks omitted.) *Fisk* v. *Redding*, 337 Conn. 361, 373, 253 A.3d 918 (2020); see also *Demond* v. *Project Service, LLC*, 331 Conn. 816, 861, 208 A.3d 626 (2019) ("Nuisances are public where they . . . produce a common injury . . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Internal quotation marks omitted.)); see generally *Pestey* v. *Cushman*, 259 Conn. 345, 355, 788 A.2d 496 (2002) ("[t]here is perhaps no more impenetrable jungle in the entire

vicinity in order to protect the general public.” For the time period from January 1 to October 7, 2017, the police responded to forty-two complaints of criminal activity, including multiple calls for violent behavior and altercations. The plaintiff also alleged that the lack of adequate security and safety protocols had a tendency to create a risk of danger and injury to those coming in contact with the premises and that the numerous calls to the police evidenced the continuous and ongoing threat to the public. The plaintiff further claimed that allowing feuding patients and their visitors to “mingle and loiter” on or near the premises, which provided methadone treatment in a high crime neighborhood without providing adequate security, safety protocols, and monitoring, constituted an unreasonable use of the property. Finally, the plaintiff alleged that the nuisance created by the defendant was the direct and proximate cause of the death of the decedent.

On January 5, 2022, the defendant moved to strike the plaintiff’s amended substitute complaint pursuant to Practice Book § 10-39.[5] In its attached memorandum of law, the defendant noted that the amended substitute complaint alleged that the stabbing occurred on the public sidewalk that it neither owned nor controlled. As to the negligence count, the defendant argued that, in the absence of a special relationship with the decedent, it had no duty to prevent fights on the public sidewalk outside of its premises. As to the public nuisance count, the defendant claimed that the allegations set forth in the amended substitute complaint did not support the claims that the operation of a methadone clinic at the premises had a natural tendency to create

law than that which surrounds the word nuisance” (internal quotation marks omitted)).

[5] Practice Book § 10-39 (a) provides in relevant part: “A motion to strike shall be used whenever a party wishes to contest: (1) the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . .”

danger and to inflict injury on public property or that the defendant's use of its property was unreasonable or unlawful.

On March 4, 2022, the plaintiff filed an objection to the defendant's motion to strike. Therein, the plaintiff argued that, because she had pleaded sufficient facts that the defendant owed a duty to the decedent, the motion to strike her negligence claim should be denied. Additionally, she claimed that a cause of action for public nuisance had been pleaded sufficiently. Specifically, the plaintiff stated: "Here, the existence and operation of the methadone clinic by the defendant has continually attracted crime and allowed individuals to loiter in the driveway and in the immediate vicinity surrounding the premises while partaking in illegal activities such as drug use, prostitution, and defecation. This continuous danger has been evidenced by numerous 911 calls for criminal activity from January 1, 2017, to October 7, 2017. . . . The amended complaint alleges that the [defendant's] allowing individuals like [Streit] to loiter on or near their property and use their parking lot to wait to attack [the decedent] is an unreasonable use of the property." The defendant filed a reply in support of the motion to strike on March 11, 2022.

On October 3, 2022, the court, *Wilson*, *J.*, issued a memorandum of decision granting the defendant's motion to strike as to both counts of the plaintiff's amended substitute complaint. Regarding the negligence count, the court concluded that the plaintiff failed to demonstrate that the defendant owed a duty to the decedent.[6] With respect to the public nuisance count,

---

[6] In particular, the court explained that "it is well established in Connecticut that a defendant owes no duty to a party who is injured on property not owned, controlled or maintained by that defendant. . . . Without a special relationship to either the decedent or Streit, the allegation that Streit waited on the outskirts of the defendant's premises before attacking the decedent on the public sidewalk does not change the analysis the court undertook in its previous memorandum of decision [regarding the lack of a duty]." (Citation omitted; internal quotation marks omitted.) See, e.g.,

the court first stated that the amended substitute complaint contained conclusory allegations that were not supported by facts. Next, the court noted that the amended substitute complaint lacked "factual allegations to indicate that the methadone clinic itself had a natural tendency to create danger and inflict injury upon person or property." Relying on this court's decision in *Perry* v. *Putnam*, 162 Conn. App. 760, 131 A.3d 1284 (2016), the trial court explained that, "unpleasant as the activities are in the surrounding area of the methadone clinic, such activities do not imbue the methadone clinic with a natural tendency to create danger and to inflict injury."

On October 19, 2022, the defendant moved for judgment on the plaintiff's amended substitute complaint, which had been stricken in its entirety.[7] The court granted the defendant's motion on November 14, 2022, and rendered judgment thereon. This appeal followed.

On appeal, the plaintiff contends that she pleaded sufficient facts to support her public nuisance claim.[8] Specifically, she argues that the court improperly determined that the allegations regarding inadequate security were conclusory and that there were no factual allega-

---

*Basone* v. *Whole Foods Market Group, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-19-6043885-S (December 14, 2020) (Connecticut law has recognized that, although business proprietor has duty to protect invitees from criminal acts of third parties, no duty exists to protect party injured on property not owned, controlled, or maintained by said proprietor); *McPherson* v. *Staples, Inc.*, Docket No. CV-12-6017390-S, 2014 WL 4099329, *3 (July 15, 2014) (same).

[7] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint . . . or any count in a complaint . . . has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. . . ."

[8] In her appeal, the plaintiff does not challenge the court's striking of her negligence claim.

tions to indicate that the methadone clinic itself had a natural tendency to inflict injury upon person or property. The defendant counters that the allegations in the amended substitute complaint regarding its rehabilitation and treatment facility being located at the premises do not satisfy any of the four elements of a public nuisance claim. We conclude that the court properly granted the defendant's motion to strike the public nuisance claim as alleged in the amended substitute complaint.

We begin by setting forth our standard of review and the relevant legal principles. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . [The court takes] the facts to be those alleged in the complaint . . . and [construes] the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Our review of a trial court's decision to grant a motion to strike is plenary. . . . *The legal conclusions contained in a complaint, however, are not deemed to be admitted by a court ruling on a motion to strike.*" (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Mashantucket Pequot Tribal Nation* v. *Factory Mutual Ins. Co.*, 224 Conn. App. 429, 441–42, 313 A.3d 1219 (2024); see also *Bennetta* v. *Derby*, 212 Conn. App. 617,

622, 276 A.3d 455, cert. denied, 344 Conn. 903, 277 A.3d 135 (2022); see generally *Lavette* v. *Stanley Black & Decker, Inc.*, 213 Conn. App. 463, 470, 278 A.3d 1072 (2022). Additionally, we note that a motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged or if the complaint lacks sufficient factual allegations that, if proven, would satisfy all the elements of the cause of action asserted. See *Stevens* v. *Khalily*, 220 Conn. App. 634, 645–46, 298 A.3d 1254, cert. denied, 348 Conn. 915, 303 A.3d 260 (2023).

Next, we set forth the elements of a claim of public nuisance. "[A] plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury [on] person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) *Kumah* v. *Brown*, 160 Conn. App. 798, 804–805, 126 A.3d 598, cert. denied, 320 Conn. 908, 128 A.3d 953 (2015); see also *Demond* v. *Project Service, LLC*, 331 Conn. 816, 860–61, 208 A.3d 626 (2019); *Ugrin* v. *Cheshire*, 307 Conn. 364, 374, 54 A.3d 532 (2012).

The resolution of this appeal is guided by our decision in *Perry* v. *Putnam*, supra, 162 Conn. App. 760. In that case, the plaintiffs claimed that the defendant town's construction of a parking lot adjacent to their property constituted a nuisance. Id., 762. In support of their claim, the plaintiffs alleged "a litany of annoyances emanating from the parking lot, ranging from vehicle noise, littering of automotive parts, assorted criminal activity, loud music, and headlights shining directly into the plaintiffs' home." (Internal quotation marks omitted.) Id., 763.[9] The trial court granted the defendant's motion

---

[9] The plaintiffs in *Perry* further alleged that third parties engaged in activities such as "[o]vernight parking of trucks . . . with motors running while

to strike and rendered judgment in favor of the defendant. Id., 763–64.

In affirming the court's judgment, we stated that, "[f]irst and foremost, a parking lot does not have a natural tendency to create danger and inflict injury [on] person or property . . . [and] [o]ur Supreme Court has repeatedly characterized this element as essential to the tort of nuisance." (Citation omitted; internal quotation marks omitted.) Id., 765. We further explained: "Connecticut cases have never deemed a parking lot to have a natural tendency to create danger and to inflict injury. Conditions deemed to have such a tendency include a diving board positioned over very shallow, murky water, without signage to indicate the danger; *Hoffman* v. *Bristol*, 113 Conn. 386, 387, 155 A. 499 (1931); a public town dump, in which unattended fires frequently burned, and which the town fire marshal had considered a hazard for some time, adjacent to marshland that abutted a row of buildings; *Marchitto* v. *West Haven*, 150 Conn. 432, 437–38, 190 A.2d 597 (1963); and landfills that leaked contaminants into the plaintiffs' water supplies; *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 36–37, 404 A.2d 889 (1978); *Dingwell* v. *Litchfield*, 4 Conn. App. 621, 625, 496 A.2d 213 (1985). The parking lot in this case lacks the dangerous qualities of the conditions complained of in the cited cases. *Unpleasant as the activities that the plaintiffs describe must be to endure, such activities do not imbue the parking lot with a natural tendency to create danger and to inflict injury.*" (Emphasis added.) *Perry* v. *Putnam*, supra, 162 Conn. App. 766.

vehicle operators sleep in the cabs, [i]nappropriate sexual activity in parked motor vehicles, [u]nderage drinking, [i]llegal drug sales, [o]vernight gatherings of vehicles and people playing loud music and engaging in boisterous behavior, and [d]angerous driving . . . ." (Internal quotation marks omitted.) *Perry* v. *Putnam*, supra, 162 Conn. App. 768.

The plaintiff contends, notwithstanding our decision in *Perry*, that the amended substitute complaint contains sufficient factual allegations. First, she notes that it alleges that, days before the fatal stabbing, the decedent and Streit had engaged in a physical altercation directly in front of the premises and that a security guard employed by the defendant responded and wrote a report about the event. Additionally, the plaintiff points to the allegations of forty-two police responses to the premises for complaints of criminal activity in the time period from January 1 to October 7, 2017. Finally, she directs our attention to the allegations that the premises was "under scrutiny from local residents for loitering, drug use, crime, prostitution, and defecation on private property . . . ." We are not persuaded.

We conclude that the defendant's premises does not have a natural tendency to create danger and to inflict injury. See *Perry* v. *Putnam*, supra, 162 Conn. App. 765; see also *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 369, 780 A.2d 98 (2001) (typical examples of public nuisances included pollution and obstruction of waterways, air and noise pollution, maintenance of fire or explosion hazard, or other unsafe premises, maintenance of house of prostitution, obstruction of safe travel on public highway, and maintenance of junkyard or dump). The premises in the present case, a center for drug rehabilitation and methadone treatment for opioid dependent patients, lacks the dangerous qualities akin to a diving board placed over shallow and murky water without warning signs, an unattended fire at a public town dump near a row of buildings, or contaminants leaking from a landfill into water supplies. See *Perry* v. *Putnam*, supra, 766. Although the conditions alleged to be existing in the immediate vicinity of the premises in the amended substitute complaint are not pleasant and may be dangerous, they do not imbue the premises itself with a natural tendency to create danger and to inflict injury. Id.

The plaintiff's argument that the allegations in the amended substitute complaint provide the necessary factual basis to support her claim of a public nuisance is unavailing. Referencing the numerous police responses to the premises in a given time period does not establish whether these responses were due to the defendant's operation of its drug rehabilitation center. The plaintiff's allegations do not state whether these police responses were related to individuals on the defendant's premises. Further, there are no specific facts alleged to connect the actions of the defendant with a natural tendency to create danger or inflict injury. Additionally, the plaintiff's conclusory assertion regarding the lack of "proper security" is not sufficient to set forth a claim of public nuisance. See *Kelsey* v. *Connecticut Performing Arts, Inc.*, Docket No. CV-00-0441464-S, 2002 WL 237424, *3 (Conn. Super. January 28, 2002) (plaintiff's allegation that he was assaulted while on defendant's premises as result of unsafe conditions and inadequate security was insufficient to state necessary facts to prevail on claim of public nuisance). For these reasons, we conclude that the plaintiff's substitute amended complaint failed to set forth a claim of public nuisance, and therefore the court properly granted the defendant's motion to strike.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

––––––––––––––––––––––––

[10] As a result of our conclusion, we need not address the defendant's other appellate arguments that the amended substitute complaint failed to plead facts showing that danger created by the premises was continuing, that the defendant's use of the premises as a drug treatment and rehabilitation center was an unreasonable or unlawful use of the land, and that the purported nuisance was the proximate cause of the decedent's injuries.